## NEISLY'S APPEAL.

A decree discharging a guardian on settlement of his accounts and payment of the balance to the substituted guardian, with a release by him, is not a bar to petition of review. The payment contemplated in the act is a payment to the ward, after he has attained his majority.

FROM the Orphans' Court of Dauphin county.

This was a petition of review, averring errors in a settled guardianship account; for omissions in the guardians to charge themselves with interest; for excess in the compensation charged; in the charges for boarding, when the labour of the ward was an equivalent to that expense; and for errors in other items, the grounds of which were not mentioned.

The petition set forth the appointment of the guardians in 1831; that in 1842 an account was settled, admitting a balance due the ward. That a petition was prepared by the guardians' attorney, which the ward, then about fourteen years of age, signed, setting forth these facts, and that the guardians were desirous of resigning, and praying the court to appoint Snevily guardian. That the decree was made, and the balance of the account paid over, and a release executed by Snevily.

The answer of the respondents set up, among other things, the decree in 1842, and the payment over of the balance, and the release.

The petition was presented in 1847, less than five years after the confirmation of the account.

The court (ELDRED, P. J.) dismissed the petition, being of opinion that the review was barred by the payment of the balance to the substituted guardian.

*Fisher*, for appellant.

*Alricks*, contrà.

*July* 5.   BELL, J.—Before the act of 13th October, 1830, the practice of granting reviews of administration and guardianship accounts, upon the suggestion of error, was liberally exercised. That statute was not intended to restrain or abridge the practice, but rather to regulate and give it efficiency by making imperative a right, which before rested in some manner in grace, and the discretion of the judge.   To advance a remedy so beneficial, the act which affords it should receive such a construction as will best give effect to its spirit, unstrained by the liberal import of its terms, where these may seem to be in conflict.   One of its leading objects is the protection of the interests of minor children, a class whose rights the law is always sedulous to shield and sustain.   We must be careful, therefore, not so to interpret the statute as to put these in danger from the ignorance, incompetency, dishonesty, or negligence of those to whom has been confided the administration of their property.

In the present instance, the accounts of the first guardians were filed on the 23d of March, and confirmed on the 10th of May, 1842.   On the latter day, a petition was presented, it cannot be doubted at the instance of the guardians, averring a settlement of their accounts, and expressing their desire to be discharged from the further execution of the trust.   This, signed by the ward, then but little more than fourteen years of age, was on the same day presented to the Orphans' Court.   It was immediately acted on by the discharge of the guardians, and the appointment of another in their stead.   Without the pause of even a day for inquiry, the new guardian received from his predecessors the balance of the ward's estate, as exhibited by the account settled, and executed to them a release of all claims and demands for or on account of any money or estate which came to their hands for the ward.

All this was done without, so far as appears, any such examination of the accounts as is contemplated by the 11th section of the act of 29th March, 1832.   No auditors were appointed to pass on them, and if the court subjected them to its own scrutiny—which is more than doubtful—no proper person was appointed to appear and act for the ward in respect to the settlement of such accounts.   These irregularities are not mentioned as affording a ground for impeaching collaterally the decree of the Orphans' Court, but as furnishing opportunity to express our disapprobation of a looseness of practice in the exercise of an important jurisdiction, which we fear is but too prevalent.   A guardian should not be discharged from his office on his own application, until his accounts have undergone the

investigation of impartial and intelligent auditors appointed for the purpose, unless, indeed, where the trust has been of such short duration, and the accounts are so simple as to make it practicable and convenient for the court itself to pass upon them. Too much care cannot be exercised in the dismissal and appointment of guardians. Looking to the numerous details to which the attention of the Orphans' Court is necessarily engaged, it may be safely asserted that a case is of very rare occurrence in which the employment of auditors for adjudicating the accounts of retiring guardians, can, without danger, be dispensed with. But in every case, without it be sent to auditors, or made the subject of the court's immediate inquiry, some proper person should be designated to watch over the interests of the ward.

In the case in hand, the petition for a review of the accounts, was preferred within the period prescribed by the statute. It is presented by the ward, though still a minor, and the single question made, is, whether the receipt by his new guardian of the balance shown by the accounts settled, precludes him from the remedy he seeks.

The proviso of the 1st section of the act of 1840, is, "that the act shall not extend to any cause where the balance found due shall have been actually paid and discharged by any executor, administrator, or guardian." It is difficult to imagine why this *proviso* was introduced in the terms in which it stands. It is certainly in conflict with the time allowed by the statute for a review, and may, in many instances, materially interfere with the remedies of wards who have been induced, ignorantly, to accept payment of the "balance found due" shortly after attaining full age. But is payment to a successor in the office of guardian such a payment as is contemplated by the *proviso?* It may be said to be within the letter, but does it satisfy the spirit of the exception? We think not. Looking to the whole enactment, it obviously regards the "person interested" in the account, as one competent by age to take care of his own rights. In the instance of a guardianship account, it is the ward himself who occupies the thoughts of the law-makers, and it is a payment to him on which the *proviso* operates. The case of a removed guardian, accounting with his successor, was not embraced within the legislative view; otherwise, surely, some further provision would have been made for the protection of the minor's interests. The law cannot have intended to place a ward at the mercy of two faithless guardians, by making the unadvised act of one, a protection of the dishonest or careless

act of the other. So to hold, would militate against the whole policy of our system governing the relation of guardian and ward, which aims to keep everything open, until, at least, the ward attains maturity. The language of the *proviso*, it is true, is so broad and general as to justify the interpretation of the Orphans' Court: but the construction to which we lean is more in consonance with the liberal spirit that seeks to extend the remedy, and better harmonizes with the tenor of other statutes in *pari materia*. Indeed it is the only one which will conserve the right of this ward, and others similarly situated, to have an investigation; for it is to be observed, no appeal lies to this court under the act of 1832, after the lapse of three years from the decree pronounced, if that be considered final; and one under tutelage cannot appeal without the agency and assent of his guardian. As there is nothing in the words used which absolutely precludes it, we feel satisfied we are but carrying out the great object of the act, by restraining the operation of the *proviso* to payments made to the ward himself, or upon his order to his personal representatives after his death, more especially as it can scarcely be imagined that the case now presented suggested itself to the legislative mind.

It is scarcely necessary to say there is nothing in the release executed by the second guardian to bar the prayer for a review. Had it been executed by the ward himself under a mistake of his rights, it would not have precluded further inquiry, as is shown by Lukens's Appeal, 7 W. & S. 48; Stanley's Appeal, decided at the present sittings, and other cases.

> Decree of the Orphans' Court reversed; and it is ordered that the record be remitted to the said court, with directions to proceed according to the prayer of the petition.

COULTER, J., dissented.